## STATE EX REL MARY BEARDSLEY, ET AL.

vs.

## LONDON & LANCASHIRE INDEMNITY CO. OF AMERICA

Superior County      Litchfield County      File #7833

Present: Hon. PATRICK B. O'SULLIVAN, Judge.

Williamson, Willis,
   Lister & Foster,             Attorneys for the Plaintiff.

Gross, Hyde & Williams,     Attorneys for the Defendant.

## MEMORANDUM FILED JULY 20, 1935.

O'SULLIVAN, J. George Sperry died leaving a will, Exhibit "A", by whose terms one Sarah Tomlinson was to enjoy the life use of the residue of his estate. His will provided further that upon her death, the estate, after the payment of various legacies totalling $31,000.00, should be distributed to such persons as would be nominated by Sarah by will and upon her failure so to do, then to her estate.

Upon the settlement of the Sperry estate, his executor turned over the residue of the personalty and the realty to Sarah who, on August 9th, 1927, before receiving it, and in accordance with an order of the Court of Probate, filed a probate bond of the customary form in the amount of $100,000.00 with this defendant as surety.

Sarah died March 9th, 1932, leaving a last will by the terms of which she nominated sundry persons to receive various sums after the payment of the legacies of $31,000.00 mentioned in the Sperry will.

Her executor, Marcus G. Merwin, has filed in the Probate Court his account of the trust estate in the hands of Sarah as trustee, and this account has been accepted. It reveals that of the $104,435.39 received as life tenant there remains but $39,318.58. To recover the difference, namely, $63,885.71, these plaintiffs have brought suit on the bond, alleging that this loss to the residue was due to negligence on the part of Sarah through waste, dissipation in speculation, and the unlawful investment of funds.

When Sarah obtained the bond in question, she agreed in writing to: "indemnify and keep indemnified the said company from any and all loss, costs, charges, suits, damages, counsel fees and expenses of whatever kind or nature, which said company shall or may for any cause, at any time, sustain or incur, or be put to or become liable for under this bond".

Sarah's own estate amounts to $14,905.26, and the total claims to $2,170.13. Hence it follows that there are insufficient funds in her estate to indemnify this defendant for any judgment these plaintiffs may obtain in excess of the net amount of her estate. For this reason this defendant has filed its cross-complaint to bring into operation, as it claims, the rule of equity that property appointed under a general power of appointment is deemed and treated as a part of the assets of the estate of the donee of the power so far as necessary

to pay claims against that estate which otherwise would go unsatisfied. **McMurty vs. The State, 111 Conn., 594.**

To this cross-complaint, there has been filed a demurrer setting forth five grounds. The first may be dismissed without comment save to observe that it is general in nature. The second ground alleges that the defendant is not a creditor of Sarah Tomlinson and consequently the rule referred to is inapplicable. Technically, it is true that this defendant is owed nothing at this time. However, one might call the defendant a contingent creditor, because if the plaintiffs are correct in their position, the defendant will assuredly soon be a creditor. To avoid circuity of action and to end the litigation which revolves around these two estates, the two successive and independent steps which the pleadings indicate may well be tried in the one action. **Welles vs. Rhodes, 59 Conn., 498; Mathewson vs. Wakelee, 83 Conn., 75.**

The fifth ground of demurrer sets forth that the defendant is estopped to make the claim its cross-complaint sets forth. Estoppal should be pleaded as a defense and not raised by demurrer.

The third and fourth grounds will be considered together as they flirt with the same idea, namely, that the plaintiffs will not be placed in a position warranting the return from them to the estate of Sarah Tomlinson of the amount of any judgment which they may recover from this defendant.

From the pleadings, it appears that the balance of the Sperry residue amounted on the death of Sarah to $39,318.58, from which has been paid to those legatees named by Sperry, the sum of $31,000.00. This leaves the present residue totalling $8,318.58. Under the rule which permits a creditor to look to the property under appointment, this defendant, if compelled to pay anything under its bond could reimburse itself to the extent of $8,318.58, plus the amount in the individual estate of Sarah.

But to go as far as the defendant urges would be to acknowledge as a principle that where nominees receive funds on a bond, furnished for their protection, it is the equivalent of receiving them from an estate under appointment. Manifestly there is something erroneous in this line of reasoning. If one should eliminate for the present the $8,318.58 and should assume that nothing remains of the residue, the source of any contribution to these plaintiffs will come, if at all, from

the existence of a bond, and not from any estate. If this is so, then the executor of Sarah's estate has parted with nothing and consequently could recover nothing, should an effort be made to invoke that rule of law that where legatees have erroneously been paid or overpaid to the exclusion of credi- tors, the estate may recover the unlawful payment of the legacies. The bond in this case was not given as a substi- tute for the assets of the life estate and never represented it. It was simply an instrument of protection to the remainder- men that Sarah "shall well and faithfully discharge the duties of her appointment". Although the measure of damages would be predicated upon the value of the assets of the life estate, this would not make the bond a substitution for the assets of the estate.

However, the pleadings indicate that there is the sum of $8,318.58 to which this defendant may look, in the event it is compelled to pay anything to these plaintiffs. To this extent the defendant in this action may recoup whatever it is compelled to pay, because if this estate was delivered to the plaintiffs Sarah's estate could reclaim it to meet the in- debtedness it would owe this defendant.

Although the ad damnum asks for relief in excess of that to which this defendant is entitled, the demurrer is not di- rected against the relief sought and accordingly may be ignored.

For the foregoing reasons the demurrer is overruled.